IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BENJAMIN J.[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 6:23-cv-01376-CL

OPINION AND ORDER

MARK D. CLARKE, Magistrate Judge.

Plaintiff Benjamin J. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income benefits. Full consent to magistrate jurisdiction was entered on September 20, 2023 (Dkt. #3). For the reasons provided below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Plaintiff is an 18-year-old man as of his alleged onset date, who alleges he is unable to work due to mental impairments. On December 12, 2019, Plaintiff protectively filed an application for supplemental security income benefits alleging disability beginning August 1, 2004. Tr. 84. The claim was initially denied on January 25, 2021, and again upon reconsideration on December 8, 2021. Tr. 83-121. A hearing was held on February 5, 2022, before

---

[1]In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

Administrative Law Judge Robert Campbell. Tr. 47. On July 19, 2022, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. Tr. 40. On August 15, 2023, the Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

2 - Opinion and Order

    3.        Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

           a.    The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

    4.        Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

    5.        Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

See also *Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the

3 - Opinion and Order

Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

### THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since December 12, 2019, the application date. Tr. 29.

2. Plaintiff has the following severe impairments: generalized anxiety disorder with panic attacks, major depressive disorder, and avoidant personality disorder. *Id.*

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.*

4. Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: simple routine work, no public contact, occasional supervisor and coworker contact. Tr. 31.

5. Plaintiff has no past relevant work. Tr. 38.

6. Plaintiff was born on October 14, 1985, and was 34 years old, which is defined as a "younger individual" on the date the application was filed. *Id.*

7. Plaintiff has at least a high school education and is able to communicate in English. *Id.*

8. Transferability of job skills is not material to the determination of disability because Plaintiff has no past relevant work. *Id.*

9. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including marker, routing clerk, and router. Tr. 39.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since December 12, 2019, the date the application was filed. Tr. 40.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec.*

*Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Plaintiff argues that the ALJ failed to incorporate into the RFC the full extent of the limitations identified by the state agency psychological consultants whom the ALJ found were somewhat persuasive. Plaintiff contends that the failure to properly credit these medical opinions resulted in reversible error at step five.

For the following reasons, the Court finds that the ALJ did not err. The decision of the Commissioner is affirmed.

### I.   PLAINTIFF'S RFC

The RFC is the most a person can do despite his physical or mental impairments. *See* 20 C.F.R. § 404.1545. "The ALJ assesses a claimant's RFC based on all the relevant evidence in [the] case record." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quotations and citation omitted). In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. 20 C.F.R. § 404.1545; *see also* Social

Security Ruling ("SSR") 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC).

At steps two and three, the ALJ considered Plaintiff's functioning in certain limitation areas, which is known as the "paragraph B" criteria. Tr. 29-30. The ALJ determined that Plaintiff has a moderate limitation concentrating, persisting, or maintaining pace, and interacting with others. *Id.* Further, the ALJ expressly noted that

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

Tr. 30. In computing Plaintiff's RFC, the ALJ determined that Plaintiff could "perform a full range of work at all exertional levels, but with the following non-exertional limitations: simple routine work, no public contact, occasional supervisor and coworker contact." Tr. 31. Plaintiff argues that the RFC finding does not capture his social interaction deficits identified by Margaret Podkova, PsyD, and Lauren Robinson, PsyD. Pl.'s Br. 12-13, ECF No. 10.. According to Plaintiff, his RFC limiting him to no public contact and occasional supervisor and coworker contact was insufficient in capturing his true work limitations. *Id.*

The state agency psychological Consultants, Margaret Podkova, PsyD, and Lauren Robinson, PysD, conducted mental assessments. They both reported that Plaintiff can work "where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of

7 - Opinion and Order

tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete." Tr. 90, 113. The ALJ found both opinions partially persuasive, however, he determined that "these assessments do not use policy compliant language and the psychologists did not explain what was meant by interpersonal contact being incidental to the work performed, tasks performed by rote with few variables and little judgment, and simple, direct, and concrete supervision." Tr. 36. The ALJ explained that these mental assessments are less persuasive because "the language used by the psychologists is somewhat vague as to the complexity of tasks [Plaintiff] can perform and what frequency of interactions [Plaintiff] can tolerate at a fulltime job. . . ." *Id.*

Plaintiff contends that by merely limiting him to "quantifiable social limitations," the RFC fails to give full credit to the state agency consultant's opinion that he should "work where interpersonal contact is incidental to the work performed." Tr. 90, 113. Plaintiff argues that the "medical opinion evidence of record supported finding [Plaintiff] restricted to social limitations not mitigated by the amount of time he interacted with others." Pl.'s Br. 4, ECF No. 10. Plaintiff contends that the RFC "include[s] only quantifiable limitations without any explanations as to why qualitative limitations were not incorporated into the RFC." *Id.* at 7. Plaintiff argues that contrary to these medical opinions and record, the RFC permits him to perform simple routine work with no public contact and occasional supervisor and coworker contact. *Id.* at 4-5. Plaintiff argues the ALJ provided no explanation when rejecting Plaintiff's need to be restricted "to certain types or kinds of interaction in some manner, and inconsistently disregarded these limitations without valid explanation. *Id.* at 8. Plaintiff asserts that even if the ALJ disagreed with the specific terms used in these medical opinions, "he was still required to account for the

tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete." Tr. 90, 113. The ALJ found both opinions partially persuasive, however, he determined that "these assessments do not use policy compliant language and the psychologists did not explain what was meant by interpersonal contact being incidental to the work performed, tasks performed by rote with few variables and little judgment, and simple, direct, and concrete supervision." Tr. 36. The ALJ explained that these mental assessments are less persuasive because "the language used by the psychologists is somewhat vague as to the complexity of tasks [Plaintiff] can perform and what frequency of interactions [Plaintiff] can tolerate at a fulltime job. . . ." *Id.*

Plaintiff contends that by merely limiting him to "quantifiable social limitations," the RFC fails to give full credit to the state agency consultant's opinion that he should "work where interpersonal contact is incidental to the work performed." Tr. 90, 113. Plaintiff argues that the "medical opinion evidence of record supported finding [Plaintiff] restricted to social limitations not mitigated by the amount of time he interacted with others." Pl.'s Br. 4, ECF No. 10. Plaintiff contends that the RFC "include[s] only quantifiable limitations without any explanations as to why qualitative limitations were not incorporated into the RFC." *Id.* at 7. Plaintiff argues that contrary to these medical opinions and record, the RFC permits him to perform simple routine work with no public contact and occasional supervisor and coworker contact. *Id.* at 4-5. Plaintiff argues the ALJ provided no explanation when rejecting Plaintiff's need to be restricted "to certain types or kinds of interaction in some manner, and inconsistently disregarded these limitations without valid explanation. *Id.* at 8. Plaintiff asserts that even if the ALJ disagreed with the specific terms used in these medical opinions, "he was still required to account for the

"types" of interaction limitations described by the agency physicians, as opposed to the amount of time Plaintiff is able to interact." *Id.*

The ALJ's RFC finding was supported by substantial evidence. The ALJ reasonably gleaned from the limitations identified by the agency physicians and reasoned that Plaintiff could have incidental interpersonal contact with others as well as "simple, direct and concrete" supervision. Tr. 31, 90, 113; *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017) (holding the ALJ did not err by gleaning from the "qualitative" limitations identified by two agency physicians, and then concluding that Plaintiff had "quantitative" limitations including being capable of only "occasional" interaction with coworkers and being limited to "relate to others on a superficial work basis"). The ALJ also rationally limited Plaintiff to occasional interaction with coworkers and supervisors, and no contact with the public. Tr. 31. The ALJ's assessment is especially reasonable given that the agency physicians assessed no more than moderate mental limitations and found that he had no limitations in being able to ask questions and get along with coworkers and peers without distracting them. Tr. 94, 117; *see Shaibi*, 883 F.3d at 1107 (holding that the ALJ's interpretation of a physician's opinion was "all the more reasonable" when viewed in the context of the physician's narrative summary conclusions, indicating that Plaintiff was not significantly limited in certain areas of mental function). Furthermore, Plaintiff's RFC limiting him to no contact with the public, is more restrictive than "the incidental" interpersonal contact limitation that the Dr. Podkova and Dr. Robinson assessed. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (explaining there is "no harm in the overinclusion of debilitating factors"). The ALJ adequately accounted for the social limitations assessed by Drs. Podkova and Robinson.

9 - Opinion and Order

Additionally, contrary to Plaintiff's contentions otherwise, the RFC finding is supported by the medical evidence. The ALJ discussed how Dr. Podkova noted that Plaintiff made progress with counseling in 2019, and that he reported fewer panic attacks and he wanted to stop treatment with Lexapro in mid-2019, but then ultimately stopped participating in counseling treatment. Tr. 36 (citing Tr. 192). The ALJ noted that Dr. Podkova indicated Plaintiff's mental health symptoms were moderately limiting, but that he had no notable problems with thought process and content, mood, insight, judgment, or cognitive abilities. *Id.* The ALJ discussed that although Plaintiff had difficulty with self-image and socializing, he was able to obtain an associate degree despite having long standing problems with anxiety. Tr. 32 The ALJ also mentioned that Dr. Georgia Wilcox, PsyD, noted that Plaintiff could engage and interact with others, but he would be challenged in these activities. *Id.* The ALJ then considered that assessment, and limited Plaintiff to work with no public contact and no more than occasional supervisor and coworker contact. Tr. 32-33. The ALJ explained that Plaintiff was observed to have thought content of worry and rumination in April 2021, but that he had appropriate memory and concentration "which suggest[s] that he can perform simple tasks despite his excessive worrying and ruminating." Tr. 33 (citing Tr. 457-58). The ALJ also discussed that Plaintiff reported being angry and irritable with his mother. Tr. 33 (citing Tr. 533). The ALJ considered this, but also explained how Plaintiff was able to interact appropriately with his providers, which suggests he can interact appropriately with supervisors and coworkers on an occasional basis. Tr. 33.

In sum, the ALJ reasonably weighed the record evidence and reasonably accounted for all of Plaintiff's social limitations.

Plaintiff next asserts that the ALJ did not account for the agency physicians' opinion that Plaintiff is limited to work "where the complexity of tasks is learned and performed by rote with few variables and little judgment." Pl.'s Br. 15-16, ECF No. 10. While the ALJ did find that this assessment lacked "policy compliant language" the ALJ still adequately accounted for this limitation by formulating an RFC where Plaintiff is limited to "routine" work. Tr. 31, 90, 113. An ALJ's RFC does not need to be identical to a credited medical opinion, it need only be consistent with it. *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Courts have used the terms "rote," "routine," and "repetitive" interchangeably when noting that the ALJ limited a claimant to work performed at a "routine or repetitive pace." *Meissl v. Barnhart*, 403 F.Supp.2d 981, 982 (C.D. Cal. 2005) (citing Social Security Act, § 223(d)(2)(A), 42 U.S.C.A. § 423(d)(2)(A); 20 C.F.R. § 416.968(a)) (Substantial evidence supported finding that Plaintiff's RFC limited her to simple tasks performed at a routine *or* repetitive pace); *see Kayla A v. Acting Comm'r Soc. Sec.*, No. 3:22-cv-05721-TLF, WL 4052233 at *4 (W.D. Wash. Jun. 16, 2023) (the ALJ did not err in finding Plaintiff was capable of carrying out "simple, routine, and rote tasks"); *see also Trapani v. Colvin*, No. C13-5301-RSM, 2013 WL 6493560 at *7 (W.D. Wash. Dec. 10, 2013) (thw ALJ did not err in formulating Plaintiff's RFC finding that he was able to perform "simple routine, repetitive tasks", with no greater than a DOT GED Reasoning level of 2). Plaintiff also fails to demonstrate any harmful error given that all three occupations identified by the ALJ are "repetitive or short cycle work," per the DOT. DOT 209.587-034 (Marker), *available at* 1991 WL 671802; DOT 222.687-022 (Routing Clerk), *available at* 1991 WL 672133; DOT 222.686-022 (Router), *available at* 1991 WL 672133.

Lastly, Plaintiff asserts that limitations to "incidental interaction" and "rote" tasks are not consistent with level two reasoning, and the ALJ therefore erred in finding that Plaintiff can

11 - Opinion and Order

perform jobs with a DOT GED Reasoning level of two. Pl.'s Br. 10-11, 16, ECF No. 10. Making no citations to legal authority, Plaintiff contends that "detailed instructions are consistent with instructions that convey thorough, elaborate, and particular substantive information and directions, which exceed any reasonable interpretation of "incidental" interaction." *Id.* at 10. Plaintiff's argument is misguided.

Occupations described by the DOT include a reasoning level ranging from 1, which requires the least reasoning, to 6, which requires the most. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). In *Zavalin*, the Ninth Circuit held that a claimant who was limited to "simple, repetitive tasks" was not able to meet the requirements of an occupation that required Level 3 Reasoning. *Id.* at 846-47. The court held that the plaintiff's limitation was more consistent with Level 2 Reasoning, which requires that the individual be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variables in or from standardized solutions." *Id.* at 847.

In this case, Plaintiff was limited to "simple routine work", and the Ninth Circuit has consistently held that a restriction to "simple, routine tasks" is consistent with level two reasoning." Tr. 31; *Zavalin*, 778 F.3d at 846; *see also Meissl*, 403 F.Supp.2d at 982 (citing Social Security Act, § 223(d)(2)(A), 42 U.S.C.A. § 423(d)(2)(A); 20 C.F.R. § 416.968(a)) (Substantial evidence supported finding that Plaintiff's RFC limited her to simple tasks performed at a routine or repetitive pace, and she was able to perform jobs with a DOT GED reasoning level of 2, which required the ability to perform detailed but uninvolved instructions); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning appears consistent with "simple and routine work tasks").

Plaintiff's assertions that a reasoning level of two requires a level of "complexity" that excludes incidental interaction and rote tasks is misguided, and he fails to cite to any authority to support his assertions. Therefore, this Court is not persuaded by his argument. In sum, while Plaintiff argues for a different interpretation of the record, the ALJ's interpretation is rational and is therefore entitled to deference. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Because the ALJ did not err in formulating the RFC, there is no error at step five.

## ORDER

The ALJ did not err. The decision is AFFIRMED.

It is so ORDERED and DATED this 14 day of August, 2024.

MARK D. CLARKE
United States Magistrate Judge

13 - Opinion and Order